**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONWIDE ADVANTAGE MORTGAGE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | 13 C 83 |
| v. | ) ) | |
| | ) | Judge Ronald A. Guzmán |
| MORTGAGE SERVICES III, LLC, FIRST STATE BANK, ANTOINETTE WASHINGTON, and PATRICK F. PEEL, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Nationwide Advantage Mortgage Company ("NAMC") brought suit against Mortgage Services III, LLC ("MSI"), First State Bank ("FSB"), Antoinette Washington and Patrick F. Peel for breaches of a mortgage purchase agreement and, as to FSB, breach of a guaranty. MSI and FSB move to dismiss the claims against them. For the reasons stated below, the motion is granted in part and denied in part.

**Facts**

NAMC alleges that on or about June 6, 2007, NAMC and MSI entered into a Correspondent Lender Purchase Agreement ("CLPA"), which provided that MSI would take and process loan applications from prospective borrowers, make mortgage loans to such borrowers and sell certain qualifying mortgage loans to NAMC. (Compl., Dkt. # 1, ¶ 9.) Also in June 2007, First State Bank ("FSB") executed a guaranty with respect to MSI's obligations under the CLPA. (*Id.* ¶ 15.) Section 8(a) of the CLPA requires MSI to repurchase a mortgage loan if "(iii) NAMC determines, in its sole discretion, that . . . any private mortgage insurance or guaranty lapses, is rescinded, or claim thereon is denied or not paid; or (iv) NAMC is legally obligated to repurchase any Mortgage Loan previously conveyed, transferred, or assigned to any third party due to defects which existed prior to, or arose as a result of, an occurrence on or before the Sale Date." (*Id.* ¶ 10.) An addendum ("Addendum") contains a similar provision for the repurchase of mortgage loans that NAMC did not underwrite. (*Id.* ¶ 14.) In addition, paragraph 12 of the CLPA contains a provision under which MSI agreed to indemnify and hold NAMC harmless "from any and all claims, losses, costs, and expenses, including reasonable attorney's fees, . . . which arise from any act or omission of [MSI.]." (*Id.* ¶ 12.)

On or around March 24, 2008, MSI closed a mortgage loan to Sterling D. Tharp in the

principal amount of $369,000.00 ("Mortgage Loan"). (*Id.* ¶ 16.)  The Mortgage Loan was secured by real property located at 640 East Oakwood Boulevard, Chicago, Illinois ("Property"). (*Id.*)  MSI sold the Mortgage Loan to NAMC for $369,000.00 in April 2008 pursuant to the terms of the CLPA and Addendum. (*Id.* ¶¶ 17-18.)  NAMC alleges that it subsequently sold the Mortgage Loan to Fannie Mae in May 2010.[1] (*Id.* ¶ 19.)

On or around March 13, 2009, NAMC filed an action against Tharp to foreclose on the Property and seek a money judgment on the underlying note. (Parker Decl. ¶ 2, Ex. A.)[2] On or around January 13, 2010, the Circuit Court of Cook County entered a Judgment For Foreclosure And Sale ("Foreclosure Judgment"). (Parker Decl. ¶ 3, Ex. B.) The Foreclosure Judgment expressly states that the Mortgage Loan, including the mortgage and underlying note, are extinguished and merged into the Foreclosure Judgment.  (*Id.*)

On January 9, 2012, NAMC received a letter from Fannie Mae demanding that it reimburse Fannie Mae for losses incurred on the loan because Tharp's employment and income were misrepresented on his loan application.  (Compl., Dkt. # 1, ¶ 22; *id.*, Ex. E.)  NAMC alleges that it was therefore obligated to repurchase the Mortgage Loan from Fannie Mae at a total cost of $449,713.13 plus interest of $58.15 per day.  (*Id.* ¶¶ 23-25.)

NAMC filed the instant breach of contract suit against MSI alleging that MSI was obligated under Sections 8 and 12 of the CLPA to repurchase the Mortgage Loan from NAMC and indemnify it for any costs and expenses, including attorney's fees.  (*Id.* ¶ 28.)  Despite NAMC's demand, MSI has refused to repurchase the Mortgage Loan.  (*Id.* ¶ 29.)  NAMC also alleges a breach of the guaranty against FSB.  (*Id.* ¶¶ 32-35.)

**Standard**

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts the well-pleaded factual allegations as true and draws all reasonable inferences from them in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009).  However, a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" and set forth facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1]  As noted immediately hereafter, a judgment of foreclosure was entered on the Property in January 2010.  It is not clear how NAMC sold to Fannie Mae a mortgage loan for a property that had been foreclosed on, but the Court need not resolve this issue for purposes of this motion.

[2]  The Court may take judicial notice of matters in the public record without converting a motion to dismiss into a motion for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012).

**Analysis**

      A.    <u>Breach of Contract as to MSI</u> (Count I)

           1.    Paragraph 8–Repurchase Provision

MSI contends that because NAMC foreclosed on the Mortgage Loan, there was no longer any Mortgage Loan for MSI to repurchase, relying on *First Place Bank v. Skyline Funding, Inc.*, No. 10 C 2044, 2011 WL 3273071, at *4 (N.D. Ill. July 27, 2011). In that case, on an identical set of facts, the court rejected the plaintiff's assertion that the foreclosure did not alter the defendant's obligation to repurchase the note and stated that "even reading the complaint in a light most favorable to plaintiff, these claims are nonsensical." *Id.* The Court noted that in Illinois, a "foreclosure decree merges the real estate mortgage and the mortgage indebtedness into a judgment"; therefore, the "plaintiff could not have repurchased loans [from Fannie Mae] that had gone to foreclosure, and [the defendant] could not have breached the Agreement by failing to repurchase loans that plaintiff did not own." *Id.* As in *First Place Bank*, MSI asserts it cannot be held liable for failing to repurchase a loan that had been merged into a judgment and no longer existed.

While acknowledging that MSI "could not have repurchased the actual Mortgage Loan at issue in this case," NAMC contends that it was not its "understanding" that it would be left "holding the bag" despite MSI's failure to properly investigate Tharp's employment and income, and that such a construction of the provision would be unreasonable. (Pl.'s Resp., Dkt. # 23, at 10). According to NAMC, reading the CLPA and Addendum as a whole, "it becomes clear that NAMC and [MSI] intended the word 'repurchase' to incorporate within its meaning an obligation to 'reimburse' NAMC if any of the stated events occurred." (*Id.* at 11.) But, under Iowa law, which the parties agree applies to the contracts at issue, "[i]t is the court's duty to give effect to the language of the contract in accordance with its plain and ordinary meaning and not make a new contract for the parties by arbitrary judicial construction." *In re Estate of Woodroffe*, 742 N.W.2d 94, 106 (Iowa 2007) (citation and internal quotation marks omitted). Paragraph 8(a) of the CLPA states that, "[u]pon the occurrence of any of the following events, [MSI] agrees to immediately repurchase the Mortgage Loan (or property if title is held by NAMC) . . . ." (Compl., Dkt. # 1, Ex. A, CLPA, ¶ 8(a).) Thus, the plain language of the relevant provision of the CLPA requires MSI to repurchase either (1) the Mortgage Loan, or (2) the property at issue if NAMC holds the title. Neither is applicable here. As noted by MSI, the definition of "repurchase" is the "act or an instance of buying something back or again." Black's Law Dictionary 1330 (8th ed. 2004). MSI cannot repurchase either the Mortgage Loan or the property because NAMC owns neither. NAMC's attempt to alter or broaden the term "repurchase" is unpersuasive.

NAMC admits that:

        While the parties had the foresight to conceive of a 'repurchase' obligation arising after a mortgage loan had been foreclosed upon, they did not necessarily conceive

3

of a situation where a 'repurchase' triggering event came to light **after** the mortgaged loan had been foreclosed upon **and after** the mortgaged property had already been sold.

(Pl.'s Resp., Dkt. # 23, at 12) (emphasis in original.) However, as already noted, it is this Court's task under Iowa law to interpret the contract as written and "not make a new contract for the parties by arbitrary judicial construction." *In re Estate of Woodroffe*, 742 N.W.2d at 106. The Court is obligated to give effect to the language of the contract according to its plain and ordinary meaning. *Id*. Doing so, this Court agrees with the *First Place Bank* court that because it is impossible for MSI to repurchase the Mortgage Loan or property, NAMC has failed to state a claim for breach of the repurchase provision. Moreover, to the extent that NAMC asks this Court to rule in its favor based on fairness, the Court cannot "relieve one of the parties from the terms of [an] agreement because of equitable considerations." *Kennedy v. State*, 688 N.W.2d 473, 480 (Iowa 2004). MSI's motion to dismiss this aspect of the breach of contract count is granted.

2.      Paragraph 12–Indemnification Provision

NAMC also alleges a breach of contract claim under the indemnification provision in paragraph 12 of the CLPA. While MSI argues that NAMC has not sufficiently pled such a claim, this Court disagrees. NAMC alleges that the CLPA contained an indemnification provision (Compl., Dkt. #1, ¶ 12), MSI was obligated to indemnify NAMC for any costs and expenses and attorney's fees NAMC spent on complying with Fannie Mae's demand that NAMC repurchase the Mortgage Loan (*Id*. ¶ 28), and NAMC made a demand on MSI for indemnification but it refused to do so. (*Id*. ¶ 29.) These allegations sufficiently plead a claim for breach of the indemnification agreement.

MSI also argues that it need not indemnify NAMC because the indemnification provision contains a limitation. Specifically, MSI notes that it may be required to indemnify NAMC if there is fraud in the origination of a mortgage "except to the extent that such fraud was not detectable through 'proper due diligence,'" which in turn is defined as "review and scrutiny of information that was known or should have been known relating to an applicant, the loan and/or the related property, as required by prudent standards of the residential mortgage industry." (Compl., Dkt. # 1, Ex. A, CLPA, ¶ 12.) MSI argues that because NAMC only alleges fraud in the origination of the Mortgage Loan by Tharp (the borrower) and the appraiser, and has not alleged that MSI should have discovered such fraud through proper due diligence, the claim should be dismissed. But NAMC need not plead every single fact supporting its claim, anticipate defenses or prove its case at this point in the proceeding. As noted above, NAMC has adequately stated a claim for breach of the indemnification provision; thus, the motion to dismiss this aspect of the breach of contract claim is denied.

B.      Breach of Guaranty as to FSB

4

FSB moves to dismiss the breach of guaranty claim against it on the ground that it cannot be liable for breach of the guaranty because the breach of contract claim against MSI must be dismissed. Because the Court has concluded that the breach of contract count with respect to the indemnification provision is not dismissed, the Court denies this basis for relief.

**Conclusion**

For the reasons stated above, MSI's and FSB's motion to dismiss [16-1] is granted in part and denied in part.

**Date**: April 25, 2013

_____

**United States District Judge**
**Ronald A. Guzmán**